UNITED STATES COURT
SOUTHERN DISTRICT OF FLORIDA

JAY MOLBOGOT,

Plaintiff,

v.                                                                                             Case No.: 9:20-cv-081254

MARINEMAX EAST, INC.

Defendant.
_____/

**DEFENDANT, MARINEMAX'S, MOTION FOR SUMMARY JUDGMENT**

Defendant, MARINEMAX EAST, INC. ("MarineMax"), pursuant to FRCP 56, files its Motion for Summary Judgment on the claims of Plaintiff, JAY MOLBOGOT, ("Plaintiff"), and states:

**SUMMARY OF THE ARGUMENT**

This case stems from Plaintiff's purchase of a new vessel from MarineMax on October 31, 2018. Plaintiff's 40 page Complaint asserts three causes of action: 1) Fraud in the Inducement; 2) Violation of Florida Deceptive and Unfair Practices Act; and 3) Negligence. Plaintiff alleges certain representations made by George Smith, MarineMax's employee, were fraudulent and induced Plaintiff to purchase a 2017 Sea Ray 400DA Sundancer, Hull ID: SERP8959C717 (the "Vessel"). He also alleges MarineMax negligently maintained the Vessel after the sale.

Plaintiff primarily complains about his frustrations with the Vessel's generator and electrical components. Thus, Plaintiff makes the condition of the generator and electrical system and the information that was provided to him the focus of the lawsuit.

Summary judgment should be entered in MarineMax's favor for multiple reasons, including:

1

- Plaintiff was specifically aware that the generator and air conditioning system were not functioning before he purchased the Vessel.

- Plaintiff entered into a Purchase Agreement with MarineMax that specifically disclaimed any oral representations made to Plaintiff prior to signing the same.

- The alleged fraudulent statements by MarineMax's employee, George Smith, were not actionable misrepresentations. Rather they were statements of opinion and "puffery."

- Plaintiff has not provided evidence substantiating his damages and seeks damages that are not available to him.

*Id.* at 2.

## MEMORANDUM OF LAW[1]

Summary Judgment should be entered against Plaintiff on his Fraudulent Inducement, Florida Deceptive and Unfair Trade Practices Act, and Negligence claims because, although he now claims his sales representative should have told him about prior issues with the generator, he was aware that the generator was not functioning properly before he purchased the Vessel. Furthermore, any alleged misrepresentations that were made prior to the purchase were properly disclaimed by the terms of the Purchase Agreement. Moreover, the alleged misrepresentations were mere statements of opinion or "puffery" that do not support claims of fraud. In addition, Plaintiff did not rely on any alleged misrepresentations *to his detriment*. It is undisputed that the Vessel was sold to Plaintiff as a new vessel with accompanying manufacturers' warranties, and pursuant to those warranties, the problems complained of by Plaintiff were addressed at little or

---

[1] Please also see Defendant's Statement of Undisputed Material Facts filed contemporaneously herewith pursuant to Local rule 56.1.

no cost to Plaintiff. Plaintiff's own expert witness acknowledges as much. Finally, Plaintiff seeks damages that are not legally available to him and has not substantiated the damages he seeks. Thus, even if Plaintiff's claims are not disposed of in their entirety, the Court should enter an order granting partial summary judgment limiting Plaintiff to the legally recognized damages available for the causes of action asserted.

### I. Summary Judgment Standard

Summary judgment should be entered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In evaluating whether summary judgment is appropriate, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court should not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### II. Plaintiff's claims fail as a matter of law because the Purchase Agreement adequately addressed and/or contradicted any alleged misrepresentations made concerning the condition of the Vessel.

#### a. As to Count I - Fraudulent Inducement

In order to recover for fraud in the inducement, Plaintiff must prove by the greater weight

of the evidence that: 1) a false statement was made regarding a material fact; 2) the individual who made the statement knew or should have known that it was false; 3) the maker intended that the other party rely on the statement; and 4) the other party relied on the false statement to its detriment. *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003).

On October 31, 2018, Plaintiff signed the Purchase Agreement. The Purchase Agreement states, in bold and all caps:

> **BUYER ACKNOWLEDGES RECEIVING A FULLY COMPLETED COPY OF THIS AGREEMENT. BUYER ACKNOWLEDGES READING AND UNDERSTANDING ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE TERMS AND CONDITIONS ABOVE.**
>
> [Molbogot Dep. Vol. 1, Ex. H][2]
>
> **2. DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE[.]… IN ALL CASES, SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE BREACH OF THIS AGREEMENT, ANY EXPRESS OR IMPLIED WARRANTY OR OTHERWISE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.**
>
> \*\*\*
>
> 8. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties and no other verbal, written or

---

[2] Plaintiff's deposition in this case occurred over two days: May 19, 2021 and April 21, 2022. We refer to the transcript from May 19, 2021 throughout as "Vol. 1," and to the transcript from April 21, 2022 as "Vol. 2."

> printed representations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties. This agreement supercedes [*sic*] any prior Purchase Agreement between Buyer and Seller for the purchase of a boat, or motor and/or accessories that had not been consummated. Except as specifically set forth in this Agreement, Seller disclaims any representations or statements by any agents, employees or representative, whether verbal or in writing, in advertisements or brochures, and Buyer has not relied upon any such representations or statements.

*Id.*

Although there is a split of authority in Florida's courts on the application of written disclaimers in purchase agreements to preclude fraud claims, the better approach favors holding the parties to their contractual promises.

In *Elbow River Mktg. Ltd. P'ship v. Clean Fuel Lakeland, LLC*, No. 8:10-cv-628-T-30AEP, the court granted summary judgment for alleged misrepresentations that were made regarding regulatory compliance and production capabilities, and that some of the assets listed under an asset Purchase Agreement were not transferred to the defendant. 2010 U.S. Dist. LEXIS 133483, at *3-4 (M.D. Fla. Dec. 16, 2010). The court determined that the Asset Purchase Agreement contradicted the alleged representations made prior to signing the agreement. Specifically, the court determined facility-related assets were sold in an "as is" condition. Specifically, section 3.4 of that Asset Purchase Agreement states in all caps:

> THE ASSETS ARE BEING SOLD TO BUYER BY SELLER IN AN "AS IS" CONDITION. SELLER EXPRESSLY DISCLAIMS, AND BUYER HEREBY EXPRESSLY WAIVES, ALL WARRANTIES RELATING TO THE ASSETS, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND INFRINGEMENT.

*Elbow River*, at *9-10.

The Asset Purchase Agreement in *Elbow River* also contains an integration clause in

section 7.1 that states, "[t]his Agreement, together with [its] schedules and exhibits, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings of the parties in connection therewith." *Id*., at *4.

The court determined the alleged misrepresentations were also contradicted by the integration clause. Specifically the court stated, "Florida law is clear that reliance on an alleged misrepresentation is unreasonable as a matter of law where the alleged misrepresentation contradicts the express terms of the ensuing written agreement." *Id*. at *10 (citing *Garcia v. Santa Maria Resort, Inc*., 528 F. Supp. 2d 1283, 1285 (S.D. Fla. 207); *Mac-Gray Services, Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005)). Further, the court stated that the representations related to the overall condition of the assets, and the "as is" clause made it clear that all warranties "relating" to the assets are expressly waived. In addition, the integration clause clearly stated it supersedes all prior agreements and "understandings" of the parties. *Id*., at *10-11.

Much like the *Elbow River* Asset Purchase Agreement, the Purchase Agreement in this case states that the Vessel is sold "AS IS" and disclaims any warranties *and* any liability for incidental or consequential damages. Specifically, this Purchase Agreement states, in all caps, and bold:

> **2. DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE[.]… IN ALL CASES, SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE BREACH OF THIS AGREEMENT, ANY EXPRESS OR**

**IMPLIED WARRANTY OR OTHERWISE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.**

[Plaintiff's Dep., Ex. H]

The Purchase Agreement also includes an integration clause much like *Elbow River* Asset Purchase Agreement. Specifically, the Purchase Agreement in this case states, "This Agreement constitutes the entire agreement between the parties and no other verbal, written or printed presentations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties. This agreement supercedes [*sic*] any prior Purchase Agreement between Buyer and Seller for the purchase of a boat, or motor and/or accessories that had not been consummated." *Id*.

Further, the Purchase Agreement specifically states, "Except as specifically set forth in this Agreement, Seller disclaims any representations or statements by any agents, employees or representatives, whether verbal or in writing, in advertisements or brochures, and Buyer has not relied upon any such presentations or statements." *Id*.

Given, the language of the Purchase Agreement, Plaintiff agreed he was not relying on any representations made by Mr. Smith and MarineMax clearly disclaimed any such representations. Plaintiff now argues that he relied on misrepresentations made by Mr. Smith regardless of the language of this Purchase Agreement.

It is unreasonable, as a matter of law, for Plaintiff to have relied only on Mr. Smith's alleged representations. It is particularly unreasonable in light of the clear language of the Purchase Agreement. Therefore, Plaintiff's fraudulent inducement claim has no merit. *See Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418-CIV-MORE, 2009 U.S. Dist. LEXIS 134735, at *6-7 (S.D. Fla. Apr. 6, 2009)(dismissing FDUTPA and fraudulent inducement claims where the contract contradicted the alleged fraudulent statement); *Creative Am. Educ., Ltd. Liab. Co. v.*

7

*Learning Experience, Ltd. Liab. Co.*, No. 9:14-CV-80900-ROSENBERG/BRAN, 2015 U.S. Dist. LEXIS 61307 (S.D. Fla. May 11, 2015)(entering summary judgment on the fraud and FDUTPA claims relating to alleged misrepresentations made prior to executing a contract adequately disclaiming prior representations to the agreement itself).

Plaintiff may argue MarineMax's Motion for Summary Judgment ("Motion") fails because of the holding in *Global Quest, LLC v. Horizon Yachts, Inc.*  However, *Global Quest* is distinguishable from this case.  While *Global Quest* and the Florida Supreme Court's decision in *Oceanic Villas, Inc. v. Godson*, 148 Fla. 454, 4 So. 2d 689 (Fla. 1941) focus primarily on an "AS IS" provision, neither case discusses or involves contracts with language that state the seller specifically disclaims any representations made by the seller or its agents, and more importantly, and they don't involve language specifically stating the plaintiff is not <u>relying</u> upon any such representations.  That is the crux of the case here.  Moreover, *Global Quest* only stands for the proposition that an action for fraudulent inducement *may* be available to a plaintiff, notwithstanding certain contract language.  *Global Quest* expressly provides that, despite the potential availability of a cause of action, evidence of contract language of the type at issue here is fatal to a plaintiff's claim.  Further, neither case addresses the long line of cases holding a completely contrary position regarding the ability to rely upon a representation made that is contradicted by the written terms of a subsequent contract.

In *Billington v. Ginn-LA Pine Island, Ltd., LLLP*, 192 So. 3d 77 (Fla. 5th DCA 2016) Florida's Fifth District Court of Appeals addressed the courts' split on this issue and the specific cases and holdings on the issue of disclaimers and non-reliance language in contracts defeating fraud claims.  *Billington* specifically analyzes *Oceanic*, as well as *Cassara v. Bowman*, 186 So. 514 (Fla. 1939).  In fact, the court identified the need for clarification of the Florida Supreme

Court's holdings in *Oceanic* and *Cassara*, and highlighted the inconsistencies in the Court's opinion in *Oceanic*, as well as the history of lower appellate courts' applications of the holdings to similar cases. The Fifth DCA affirmed the holding that "non-reliance" and "waiver" components of the applicable disclaimer clauses negated the appellant's fraud claims. The contract at issue stated that the buyer/appellant specifically acknowledges that it was not relying on any representations. *Billington,* 192 So. 2d at 79-80. Ultimately, after a lengthy discussion and thorough analysis, the *Billington* court held that the appellant could not recant his contractual promises that he did not rely upon extrinsic representations.

The Purchase Agreement's language of this case is also remarkably similar to that of *Peebles v. Sheridan Healthcare, Inc.*, 853 So. 2d 559 (Fla. 4th DCA 2003)(holding that the agreement stating that the plaintiffs had "not relied upon any representations, warranties or agreements of any person other than those set forth in this agreement," precluded the fraud claims as a matter of law.)

In *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007), the court held that the following language was sufficient to hold that the plaintiffs could not reasonably rely on prior representations,

> Purchaser represents to the Developer that Purchaser has not relied upon any prior agreements or representations made by anyone other than Developer, or oral statements (including oral statements of sales representatives), except as specifically stated in this Contract.

*Garcia*, at 1295. Multiple courts have held similar language precludes these claims.[3] This

---

[3] In *Rosa v. Amoco Oil Co.*, the court specifically stated that <u>the integration clause in the Transfer Agreement was the language that precluded plaintiff's reliance on prior representations</u>. 262 F. Supp. 2d 1364, 1367-1368 (S.D. Fla. 2003). The other cases supporting MarineMax's position are: *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, Case No. 08-22418-CIV-MORE, 2009 U.S. Dist. LEXIS 134735, at *6-7 (S.D. Fla. Apr. 6, 2009)(dismissing FDUTPA and fraudulent inducement claims where general language that the plaintiff was not relying on representations made to

9

language is similar to the language contained in the Purchase Agreement. Therefore, it was unreasonable for Plaintiff to rely upon the alleged representations of Carrie Dennison in light of the language contained in the Purchase Agreement.

This case is also similar to *Cassara v. Bowman*, 186 So. 514 (Fla. 1939), which, as the court in *Global Quest* noted, was <u>not</u> overruled by *Oceanic*. In that case, the Court affirmed the dismissal of a rescission claim on the basis that the lessor misrepresented the reputation of the hotel, which was the subject of the lease. In addition, the lessee claimed the lessor misrepresented the amount of profits earned, and the amount for which he leased the penthouse. The court dismissed the case because the lease contained a clause indicating that the parties' agreement was not based upon any oral representations and that no prior representations or agreement could be used to alter the lease terms. The Court focused on whether the reputation of the hotel was as it was described and determined that because the appellant made no inquiry as to the character and reputation of the hotel, which was readily available through common knowledge. Similarly, in this case, Plaintiff knew first hand that the generator was not working before he decided to buy the Vessel. Given he had the ability to obtain the information, as did the lease in *Cassara* together with the contract's language, Plaintiff was not fraudulently induced into signing the contract. The *Global Quest* court did not acknowledge this case more than including it in its citation. Due to the distinction, *Global Quest* is inapposite.

---

him, accepted the vessel in its "as is" condition, without warranties, and it "constitutes the entire agreement between the parties…" contradicted the alleged fraudulent statements); *Creative Am. Educ., Ltd. Liab. Co. v. Learning Experience, Ltd. Liab. Co.*, No. 9:14-CV-80900-ROSENBERG/BRAN, 2015 U.S. Dist. LEXIS 61307 (S.D. Fla. May 11, 2015)(entering summary judgment on the fraud and FDUTPA claims relating to alleged misrepresentations made prior to executing a contract adequately disclaiming prior representations to the agreement itself; specifically rejecting the plaintiff's contention that the contract had to address the plaintiff's specific claims); *Barnes . Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996)("it is a basic tenant of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties.")(citing *Pettinelli v. Danzig, 722 F.2d 706, 710 (11th Cir. 1984).*

Further, Plaintiff's reliance upon the representations was unreasonable as a matter of law. *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007). In *Garcia*, the court dismissed the **fraud claims** because the language in the contract specifically stated, "Purchaser represents to the Developer that Purchaser has not relied upon any prior agreements ore representations made by anyone other than Developer, or oral statements (including oral statements of sales representatives), except as specifically stated in this Contract." Based upon that language, the court held that no reliance could be reasonable in the face of this express statement. *Garcia*, 528 F. Supp. 2d at 1295. Thus, the non-reliance language of the contract, on its own, is enough to defeat Plaintiff's claims and support entry of summary judgment in favor of MarineMax.

### b.  As to Count II – Violation of Florida Deceptive Unfair Trade Practices Act.

The same analysis for Count I above applies to the FDUTPA claim warranting summary judgment in favor of MarineMax. To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Deception occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). This standard "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Id.* (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Au'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). An unfair practice is "one that offends established public policy and ... [one that] is *immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.*" *Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320, 1327-28 (S.D. Fla.

2017) (quoting *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010) (*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)) (emphasis added).

In *Rosa v. Amoco Oil Co.,* the court held that reliance on representations was not reasonable as a matter of law where the contract stated that the purchaser has not relied upon any prior agreements or representations except those specifically stated in the contract. 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003). Thus, the claim was dismissed with prejudice. The *Rosa* contract has similar language disclaiming the consumer's reliance upon prior representations. Florida law is clear that where a contract's language contradicts the alleged fraudulent statements, the claims have no merit. *See Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (a fraudulent inducement cannot "lie where the alleged fraud contradicts a subsequent written contract."); *see also Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418-CIV-MORE, 2009 U.S. Dist. LEXIS 134735 (S.D. Fla. Apr. 6, 2009)(dismissing FDUTPA and fraudulent inducement claims where the contract contradicted the alleged fraudulent statement); *Creative Am. Educ., Ltd. Liab. Co. v. Learning Experience, Ltd. Liab. Co.*, No. 9:14-CV-80900-ROSENBERG/BRAN, 2015 U.S. Dist. LEXIS 61307 (S.D. Fla. May 11, 2015)(entering summary judgment on the fraud and FDUTPA claims relating to alleged misrepresentations made prior to executing a contract adequately disclaiming prior representations to the agreement itself); *TRG Night Hawk Ltd. v. Registry Dev. Corp.* 17 So. 3d 782 (Fla. 4th DCA 2009); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.,* 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999); *Barnes v. Burger King Corp.,* 932 F. Supp. 1420, 1428 (S.D. Fla. 1996); *Acquisition Corp. of Am. v. FDIC,* 760 F. Supp. 1558, 1561 n.6 (S.D. Fla. 1991). Therefore, summary judgment in favor of MarineMax is proper on the FDUTPA claim.

    **III.    Plaintiff waived his right to claim he was fraudulently induced into purchasing the Vessel.**

Florida courts have expressly held that "[w]aiver of fraud can occur where a party should have discovered the fraud through ordinary diligence." *Al-Ghena Int'l Corp. v. Radwan*, 698 F. App'x 997, 1000 (11th Cir. 2017)(quoting <u>Zurstrassen v. Stonier</u>, 786 So. 2d 65, 70 (Fla. 4th DCA 2001)). In Florida, courts are clear that if the defrauded party has actual or imputed knowledge of the facts constituting the alleged fraud at the time the subsequent agreement there is waiver. *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 508 (S.D. Fla. 2000) (citing *Poole v. Crabtree*, 566 So. 2d 597, 598 (Fla. 5th DCA 1990) (holding that plaintiff did not waive fraud claim where she did not know of facts that gave rise to the fraud at the time she entered into novation).

In *Coral Gables Imported Motorcars*, the court disposed of the plaintiff's fraud claim because the plaintiff executed a subsequent franchise agreement with the defendant after the first contract between the parties had expired. 673 F.2d 1234 (11th Cir. 1982). Prior to the signing the second agreement, the plaintiff learned that the defendants had made several false promises. *See id.* at 1240. The court found that plaintiff's knowledge, coupled with the execution of a subsequent agreement, effectively waived the plaintiff's fraud claim. *Id.*

Assuming *arguendo*, Mr. Smith's statements were misrepresentations, it is undisputed that Plaintiff had knowledge of the alleged misrepresentation. Plaintiff participated in a sea trial of the Vessel *before* he entered into the purchase agreement, and the generator and air conditioning were inoperable at that time. [Plaintiff's Dep.  Thus, Plaintiff had knowledge of the alleged misrepresentations. Accordingly, summary judgment should be entered in MarineMax's favor on Counts I and II.

    **IV.    The allegedly fraudulent statements made by George Smith are not actionable**

13

An action for fraud generally must be based on a statement of fact, and not on statements of opinion. *Douse v. Boston Scientific Corp.*, 314 F. Supp. 3d 1251 (M.D. Fla. 2018)(applying Florida law). Likewise, a seller's "puffing" about a product cannot be construed as a fraudulent misrepresentation. *Wasser v. Sasoni*, 652 So.2d 411 (Fla. 3d DCA 1995). A buyer is held responsible for for investigating the truth of such "puffing" statements. *MDVIP, Inc. v. Beber*, 222 So.3d 555 (Fla. 4th DCA 2017). Furthermore, parties negotiating the sale of personal property are given considerable leeway in making representations while negotiating. *Tampa Union Terminal Co., v. Richards*, 146 So. 591 (1933). Generally, such statements do not subject the party making them to liability for fraud, except where that party resorts to fraudulent means to prevent the other party from investigating. *Id.*

Here, Plaintiff, in his Complaint (and in his testimony), makes rambling allegations of fraudulent misrepresentations. They boil down to statements made by George Smith, a salesperson, around the time of the sea trial and purchase of the Vessel by Plaintiff. In his Complaint, Plaintiff alleges Smith told him, when the generator did not work during the sea trial, that the generator needed "adjustments" and it was not uncommon for new boats to have such issues. [D.E. 1, Compl. ¶ 13]. Smith allegedly went on to say the Vessel would be "up and running in no time," Plaintiff would enjoy the comfort of the Vessel, and it would be "extremely pleasurable." [D.E. 1, ¶ 14]. First, Plaintiff offers no solid evidence to demonstrate Smith believed, or should have believed, these statements to be untrue. More to the point, however, such statements constitute the opinion or "puffing" of Smith – a salesperson. He was not a marine technician, and was not a representative of the manufacturer of the new boat or any of its components. Comments like these by a salesperson trying to sell a beautiful, new boat to an interested buyer are not actionable fraudulent misrepresentations. What's more, neither Smith nor

MarineMax prevented Plaintiff from investigating the quality or condition of the Vessel. Indeed, Plaintiff participated in the sea trial and, shortly after the purchase, but before taking delivery of the Vessel, he had a marine surveyor inspect it. [Molbogot Dep., Vol. 1, 70:20-25; 81:8-13]. The surveyor reported the generator was not tested under load because it was undergoing repair by the manufacturer, and he simply suggested that it be serviced and corrected as needed and then tested. [Molbogot Dep., Vol. 1, 148:4-7]. There is no indication Plaintiff could not have had the survey conducted prior to his purchase if he wished. Indeed, Plaintiff testified that he thinks he should have had the Vessel surveyed prior to his purchase. [Molbogot Dep., Vol. 1, 147:1-6].

## V. Plaintiff seeks damages that are not recoverable and has failed to put forth sufficient evidence of his alleged damages

Plaintiff has the burden of proving his damages in this case. Plaintiff's claims fail as he has failed to put forth sufficient evidence to demonstrate the damages he seeks and he seeks damages that are unavailable to him. To date, the only evidence of damages set forth by Plaintiff has been speculative, unsupported by the evidence, and inconsistent with the measure of damages available under each cause of action asserted by Plaintiff.

### a. Damages available for fraud

In the case of fraud, an injured party may recover either the "out of pocket" loss or the "benefit of the bargain" loss. *Minotty v. Baudo*, 42 So.3d 824 (Fla. 4th DCA 2010). Under the out of pocket rule, damages are measured as the difference between the purchase price and actual value of the property. *Kind v. Gittman*, 889 So.2d 87 (Fla. 4th DCA 2004). Damages under the benefit of the bargain rule are the difference between the value of the property as represented and the actual value of the property on the date of sale. *Morgan Stanley & Co., Inc., v. Coleman (Parent) Holdings, Inc.* 955 So.2d 1124 (Fla, 4th DCA 2007). Plaintiff has put forth no evidence to support

15

his claim under either measure.

      **b.** Damages available under FDUTPA

A plaintiff bringing a FDUTPA claim may recover actual damages. Similar to the measure of damages available for fraud, actual damages under the Act are the difference in the market value of the product in the condition in which it was delivered and the market value in the condition in which it should have been delivered. *Gastaldi v. Sunvest Resort Comm., LC*, 709 F.Supp.2d 1299 (S.D. Fla. 2010)(applying Florida law). The Act does not provide for recovery of nominal damages, speculative losses, or consequential damages. *Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819 (Fla. 4th DCA 2010). Again, Plaintiff has failed to put forth evidence of damages recoverable under the Act.

      **c.** Damages for negligence

Plaintiff's negligence claim arises from alleged negligent repairs after the purchase of the Vessel. Such claims fall under the general maritime law. The damages claimed as a result of MarineMax's alleged negligence are unclear, but Plaintiff seems to seek "loss of use" damages. Loss of use damages do not apply to recreational vessels, unless it is demonstrated that they are hired out as charter vessels for profit. *M/Y P.I.I. LLC v. H&R Marine Engineering, Inc.*, 544 F. Supp.3d 1334 (S.D. Fla. 2021).

      **d.** The damages claimed

In this case, Plaintiff present little to no evidence of damages recoverable on the claims asserted. He provided a spreadsheet of claimed damages, but he does not relate it to the claims asserted. [Molbogot Dep., Ex. E.]. Rather, Plaintiff seeks to claim expenses incurred that he cannot relate to any conduct, or lack of action, on the part of MarineMax. Moreover, Plaintiff's

16

own expert electrical engineer, Steve Hebert, admitted that since the generator in the Vessel was replaced, the electrical problems on the Vessel seem to have been resolved. [Hebert Dep. 39:6-23]. Mr. Could find no electrical problems that have not been resolved and did not offer the opinion that MarineMax caused any of the issues experienced by the Vessel. (Hebert Dep. 109:20–110:9].

Finally, regarding the measures of damages available for claims of fraud and FDUTPA, Plaintiff acknowledges that he presently lists the Vessel for sale for $499,000. [Molbogot Dep. Vol. 2. 60:5-9]. This is after using the Vessel for over three years and putting over 900 hours on the engines. Otherwise, he has presented no evidence to establish his "out of pocket" or benefit of the bargain" damages.

## CONCLUSION

Summary Judgment should be entered in favor of MarineMax given the lack of fraudulent misrepresentations by MarineMax, Plaintiff's knowledge of the condition about which he complains, Plaintiff's disclaimer any representations that were made, and Plaintiff's failure to prove his damages.

WHEREFORE, Defendant, MARINEMAX EAST, INC., respectfully requests this Court enter summary judgment against Plaintiff, JAY MOLBOGOT, in favor of MarineMax, on all counts of the Complaint, and for such further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Michael J. Bradford*
**MICHAEL J. BRADFORD**
Florida Bar No. 184314
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
201 E. Kennedy Blvd., Suite 1100
Tampa, Florida, 33602
Phone:        813-898-1800

            Facsimile: 813-221-5026
            *Attorneys for Defendant, MarineMax East, Inc.*

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on May 16, 2022, I electronically filed with the Clerk of the Court via the CM/ECF portal to: Daniel Lustig, Esq., Dominique Torsiello, Esq., Pike and Lustig, LLP, 1209 N. Olive Ave., West Palm Beach, FL, at pleadings@pikelustig.com, *Counsel for Plaintiff*.

            */s/ Michael J. Bradford*
            Attorney