UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-81254-MATTHEWMAN

JAY MOLBOGOT,

    Plaintiff,

vs.

MARINEMAX EAST, INC.,

    Defendant.

_____/

FILED BY \_\_\_\_KJZ\_\_\_\_ D.C.

Jul 11, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE OPINION TESTIMONY OF EDWARD J. BRILL [DE 111]

THIS CAUSE is before the Court upon Plaintiff, Jay Molgobot's ("Plaintiff") Motion to Exclude Opinion Testimony of Edward J. Brill ("Motion") [DE 111]. Defendant, MarineMax East, Inc. ("Defendant"), has filed a response to the Motion [DE 131], and Plaintiff has replied [DE 140]. The Court held a hearing on the Motion via Zoom video teleconference on July 7, 2022. The matter is now ripe for review. The Court has carefully considered the parties' written submissions, the parties' oral argument at the hearing, the record, and applicable law.

### I.    BACKGROUND

Edward J. Brill, P.E. CFEI ("Mr. Brill"), is a S-E-A Senior Project Engineer who was retained by Defendant to investigate defects of the Vessel that Plaintiff purchased from Defendant in October 2018. [DE 111-1 at 4]. He described his methodology as follows:

> The methodology utilized by S-E-A during the investigation of this incident was in accordance with *The Scientific Method* and applicable principles. The investigation and analysis of any incident is a complex and scientific endeavor. The methodology of such an endeavor, therefore, must include the comprehensive, objective, and

1

accurate compilation and analysis of the available data.

[DE 111-1 at 4]. Mr. Brill made several conclusions in his expert report regarding the Vessel's electrical systems and the causes of the electrical issues. *Id.* at 4-5.

## II.   MOTION, RESPONSE, AND REPLY

In his Motion, Plaintiff does not challenge the knowledge and background of Mr. Brill. [DE 111 at 3]. Rather, Plaintiff argues that Mr. Brill's testimony is not reliable as he failed to employ a reliable scientific methodology to reach his conclusions, and Mr. Brill's testimony would not assist the trier of fact. *Id.* at 3–4. According to Plaintiff, "there is no rejection—or even mention—of alternative hypotheses or anything scientific about Mr. Brill's testimony whatsoever." *Id.* at 4. Moreover, Mr. Brill's methodology "is the very definition of pure *ipse dixit*. His report is critically lacking in any real explanation of methodology, analysis, empirical data, or studies to support the conclusion that there was no defect. Moreover, he fails to analyze any alternative theories or hypotheses." *Id.* at 5. Plaintiff asserts that "[e]ssentially, this non-scientific, *ipse dixit* opinion of Mr. Brill is that ALL boats are a little bit broken, therefore the jury in this case should excuse the defects on the vessel in this case. This is impermissible expert testimony and invades the province of the jury." *Id.* at 6.

In response, Defendant first argues that it "makes no difference that Mr. Brill relies on data derived from the reports, surveys and other documents, rather than on an in-person inspection." [DE 131 at 5]. Next, Defendant contends that Mr. Brill's methodology is sufficiently reliable in that he "critically reviewed the data and analyses in the reports by Jim Cote, Brig Burgess, Ward Marine Electric, Rich Parry, Kurt Merolla and Steve Hebert." *Id.* at 8. More specifically, Mr. Brill "reviewed the vessel surveys and reports, all of the work orders for relevant repairs, invoices and

other documents, checked them for validity and inconsistencies and weighed to what extent the conclusions in the reports were supported by the referenced data." *Id.* Defendant further argues that Mr. Brill did, in fact, consider alternative causes and then concluded the "conditions affecting individual boats were too varied to compare one to the other." *Id.* at 9. Defendant maintains that Mr. Brill's method of assessing boat electrical issues is "accepted in his industry" and that "[c]ritically analyzing thousands of documents, reports[,] surveys, etc. and arriving at conclusions—even a conclusion that no definitive conclusion can be made—is a valid application of the Scientific Method, as stated in the Brill Report." *Id.* at 11. According to Defendant, "Mr. Brill's review and analysis is offered to explain whether the Vessel exhibited extraordinary problems at various times and to provide an accessible summation of all of the data and information contained in the other reports, surveys and other documents. Causation is a secondary issue." *Id.* at 13. Finally, Defendant contends that Mr. Brill's testimony is helpful to the trier of fact because the "area of marine electrical engineering is a complex field." *Id.* at 14.

In reply, Plaintiff asserts that Mr. Brill's opinions are not reliable under *Daubert* because "Mr. Brill's theory cannot be tested, there is a complete and total absence of data, his opinion cannot be subject to any review because he claims it comes from his head, he demonstrates no particular scientific technique that is testable, and whatever methodology Mr. Brill used cannot be one generally accepted in the community because we still do not know what it is." [DE 140 at 1]. Plaintiff contends that "Mr. Brill's report, analysis, and opinions are critically lacking in any sort of facts or comparison that would make them reliable," and his opinions are "based solely on his subjective belief, speculation, and critical assumptions that he failed to support with evidence." *Id.* at 2–3. Plaintiff also points out that Mr. Brill was recently excluded from testifying in another case

3

for the same issues raised herein. *Id.* at 3 (citing *Nat'l Sur. Corp. v. Ga. Power Co.*, 2:17-CV-68-RWS, 2019 WL 4394403, at *6 (N.D. GA September 12, 2019)).

### III.     RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2–3 (S.D. Fla. July 1, 2020) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n*, No. 19-cv-61365, 2020 WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the

reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

## IV.    ANALYSIS AND RULINGS

As an initial matter, as discussed at the July 7, 2022 hearing, Defendant is not seeking to admit into evidence Mr. Brill's expert report, and the Court does not intend to admit into evidence Mr. Brill's expert report.[1] Therefore, to the extent that Plaintiff argues that Mr. Brill's expert report should be excluded, this issue is resolved, and Plaintiff's Motion is therefore granted in part.

With regard to the *Daubert* analysis, there is no dispute between the parties as to Mr. Brill's qualifications. The Court therefore turns to the reliability of Mr. Brill's methodology. In considering the relevant case law, Mr. Brill's report, and his deposition testimony, the Court finds that Mr. Brill relied on a sufficiently reliable scientific method to come to his conclusions regarding the Vessel. First, the Court finds that Mr. Brill's opinions are based on sufficient facts and data. It is of no import that Mr. Brill relied on the data derived from the reports, surveys, and other documents of others rather than an in-person examination. This is because "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592.

Next, in Plaintiff's Motion, he objects to Mr. Brill testifying as an expert on the basis that Mr. Brill does not rely on any accepted standard or analysis. However, Plaintiff cites to cases involving *Daubert* motions filed in the medical context to support his argument. *See Chapman v.*

---

[1] This Court does not normally, absent special circumstances, allow an expert's report to be submitted to the jury as they often contain inadmissible, irrelevant, or unfairly prejudicial statements or information. *See, e.g., W. Palm Beach Acquisitions, Inc. v. Kia Motors Am., Inc.*, No. 20-CV-80780, 2022 WL 1211403, at *3 (S.D. Fla. Apr. 25, 2022); *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 585707, at *3 (S.D. Fla. Feb. 25, 2022); *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 7414523, at *3 (S.D. Fla. July 29, 2020), *report and recommendation adopted*, No. 19-81160-CIV, 2020 WL 7409000 (S.D. Fla. Dec. 16, 2020).

*Proctor & Gambling Distrib., LLC*, 766 F.3d 1296, 1310 (11th Cir. 2014) (completing the Daubert analysis when toxic substances are at issue); *Hendrix v. Evenflo, Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010) (completing the *Daubert* analysis as to differential etiology). These cases are inapposite because, in these cases, there are case law-driven standards for conducting the expert analysis. In the engineering field relating to vessels, the parties have not pointed to any such accepted standard and the Court has been unable to find a widely accepted standard as to how to analyze electrical issues associated with a vessel. In fact, at the July 7, 2022 hearing, counsel for both Plaintiff and Defendant represented to the Court that they were not aware of any widely accepted standard as to how to analyze electrical issues relating to a vessel.

Mr. Brill testified regarding his methodology at his deposition. He explained that he compared the Vessel to similar vessels of size, manufacturer, and age. [DE 111-2 at 41:01-02]. He also testified, "I compared what I know based on my four [sic][2] years of experience and my last 20 years of investigating hundreds of vessels, as it relates to seaworthiness and operational [sic] of the electrical systems on boats, and this boat would be consistent with the boat of its age, number of hours and usage." [DE 111-2 at 40:08-14]. He further explained,

> Well, for the scientific method, testing includes cognitive testing and cognitive testing is done in case if we don't have the evidence to look at, but we test it based on all of the available information, photographs, documents, reports, other investigations that are done along with training education, knowledge, and experience. All those things are used to determine whether or not we have enough information to determine a cause or determine, you know, what the problem is and what caused the problem.

[DE 111-2 at 93:3-13]. This a sufficiently reliable scientific method. And it is irrelevant whether

---

[2] The parties both agreed at the hearing that this should most likely say "forty" instead of "four." Plaintiff's counsel also reiterated at the hearing that he does not dispute Mr. Brill's qualifications.

Mr. Brill reached a concrete conclusion. *See Hunter v. Marlow Yachts Ltd., Inc.*, No. 8:09-CV-1772-T-TBM, 2011 WL 3794756, at *2 (M.D. Fla. Aug. 26, 2011) (rejecting the plaintiffs' argument that, since the expert did not reach a concrete conclusion and the testimony was based solely on prior experience, the expert's testimony was unreliable). Plaintiff has not met the burden to prove that Mr. Brill should be excluded to testify as an expert witness according to Fed. R. Evid. 702.[3]

Finally, Plaintiff also argues that Mr. Brill did not consider an alternative theory about the Vessel. In his report, Mr. Brill opined that "[t]he causes of the electrical issues identified in the various reports cannot be determined because of the combination of actions attributed to the vessel manufacturer, component manufacturers, MarineMax and other service companies, and maintenance issues during the time the vessel has been in service." [DE 111-1 at page 5 of 15]. Given Defendant's counsel's assertion at the hearing that he is not offering Mr. Brill to establish causation, the law cited by Plaintiff regarding an expert's failure to enumerate and eliminate alternative causes is inapplicable to the facts at hand.

With regard to the third factor of the *Daubert* analysis, Mr. Brill's decades of experience in the engineering industry will clearly aid the trier-of-fact in understanding the nuances associated

---

[3] The case cited by Plaintiff in its reply, *Nat'l Sur. Corp. v. Ga. Power Co.*, No. 2:17-CV-68-RWS, 2019 WL 4394403, at *6 (N.D. Ga. Sept. 12, 2019), is easily distinguishable. In that case, Mr. Brill testified as to the cause of a fire. *Id.* at *6. In ruling upon the defendant's *Daubert* motion, the court found that that Mr. Brill "did not bridge the gap between the data and the opinion proffered. The data indicates that there was arcing in the meter and that the work done by Defendant the days before likely involved removing and reinstalling the meter. As discussed above, neither of those facts lead to the conclusion that Defendant's work damaged the meter, or that the meter malfunctioned and caused the fire." *Id.* The underlying facts of the case at hand are entirely factually distinct. In this case, there was ample data for Mr. Brill to review. Moreover, as stated above, Mr. Brill is not being offered to opine as to causation here. The Court also notes that at least one other court in the Southern District of Florida has permitted Mr. Brill's testimony. *See Aspen Specialty Ins. Co. v. Turbo Air, Inc.*, No. 16-62694-CIV, 2018 WL 4901404, at *1 (S.D. Fla. Jan. 16, 2018).

with the Vessel's electrical systems and the causes of the electrical issues. Expert testimony is only properly excluded under the third requirement of Rule 702 if "it is not needed to clarify facts and issues of common understanding that jurors are able to comprehend for themselves." *Zanakis v. Scanreco, Inc*., No. 1:18-CV-21813-UU, 2019 WL 2215554, at *3 (S.D. Fla. Apr. 9, 2019) (*citing Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys*., 50 F.3d 908, 917 (11th Cir. 1995). Electrical issues on a vessel are complicated and do require a detailed explanation to a lay person. Mr. Brill has experience explaining electrical issues to a trier-of-fact as he testified multiple times already as an expert witness. *See, e.g., Aspen Specialty Ins. Co. v. Turbo Air, Inc.,* No. 16-62694-CIV, 2018 WL 4901404, at *2 (S.D. Fla. Jan. 16, 2018) ("The Court has found Mr. Brill is qualified and proposes to give testimony that passes muster under *Daubert*. As such, he will not be excluded pretrial. Defendant's criticisms of Mr. Brill's opinion may form the basis for '[v]igorous cross- examination' and 'presentation of contrary evidence' at trial."). In sum, Mr. Brill's testimony will assist the trier-of-fact due to his experience and knowledge in the engineering field and his ability to simplify the complex issues.

The Court finds, at this juncture, that the methodology used by Mr. Brill is sufficiently reliable as determined after a *Daubert* inquiry. Moreover, his testimony will potentially assist the trier of fact in this complex area of the law. Plaintiff will be permitted to vigorously cross-examine Mr. Brill as to his testimony and opinions.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Exclude Opinion Testimony of Edward J. Brill [DE 111] is **GRANTED IN PART AND DENIED IN PART**, as stated above. Mr. Brill's written report shall not be admitted as

evidence at trial. However, Mr. Brill shall be permitted to testify and state his testimony and opinions subject to cross-examination.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of July, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge
