UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-81254-MATTHEWMAN

JAY MOLBOGOT,

     Plaintiff,

vs.

MARINEMAX EAST, INC.,

     Defendant.

_____/

FILED BY _____KJZ_____ D.C.

Jul 11, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT [DEs 114, 117]

**THIS CAUSE** is before the Court upon Defendant, MarineMax East, Inc.'s ("Defendant" or "MM" or "MarineMax") Motion for Summary Judgment [DE 114] and Plaintiff, Jay Molbogot's ("Plaintiff" or "Molbogot") Motion for Summary Judgment [DE 117]. The parties have filed Statements of Material Fact and evidence to support their motions and have responded and replied to each motion for summary judgment. *See* DEs 112, 113, 115, 116, 125, 126, 127, 129, 133, 134, 135, 136, 137, 138, 139, 148, 149, 151, 152, 153. The Court held a hearing on the motions on July 7, 2022 [DE 161]. Accordingly, the motions are now ripe for review, and the Court has carefully considered the filings and attachments thereto, the arguments of counsel, and the entire docket in this case.

## I.     THE COMPLAINT [DE 1]

Plaintiff's Complaint contains three counts against Defendant: fraud in the inducement (Count I); violation of the Florida Deceptive and Unfair Trade Practices Act (Count II); and negligence (Count III). *See* Compl., DE 1.

1

## II.    UNDISPUTED FACTS

The following facts are drawn from the uncontested portions of the record together with the parties' respective statements of material facts ("SMF") and responses thereto [DEs 115, 116, 125, 137], as well as the supporting affidavits and declarations [DEs 116-11, 116-17, 125-8, 125-11].[1]

### Molbogot's Initial Contact with MM Employee George Smith

In 2018, Molbogot was looking for a 2016 or 2017 40-foot Sundancer with low hours. [Pl.'s SMF ¶ 3]. On October 15, 2018, George Smith ("Smith") sent Molbogot an email. [Pl.'s SMF ¶ 1]. Smith has been in the boat business for 34 years, having more experience selling boats than someone who has never purchased a boat. [Pl.'s SMF ¶ 2; Pl.'s Resp. SMF ¶ 20; Pl.'s SMF ¶ 7]. On October 17, 2018, Smith sent Molbogot a link with a photo gallery and description of a new 2017 40' Sea Ray Sundancer 400 located in Clearwater, Florida. [Pl.'s SMF ¶ 4]. On the same day, Smith sent a second email attaching the list price and options of the new 2017 40' Sea Ray Sundancer (hereinafter "the Vessel"), including a "boat show discount" price. [Pl.'s SMF ¶ 5]. Smith assured Molbogot that he should feel comfortable doing business with MM. [Pl.'s SMF ¶ 11].

On October 19, 2018, Smith confirmed the demo of the Vessel was to be arranged in Clearwater, Florida. [Pl.'s SMF ¶ 13]. Molbogot lives in Lake Worth, Florida, over four hours away from Clearwater. [Pl.'s SMF ¶ 14].

---

[1] Plaintiff's SMF is at DE 116. Defendant's SMF is at DE 115. Plaintiff's Response SMF is at DE 125. Defendant's Response SMF is at DE 137.

<u>The Vessel's Generator and Trim Tabs Issues</u>

Smith knew there were probably 50–100 boats in inventory at MarineMax, but the Vessel was a "leftover." [Pl.'s SMF ¶ 63]. The boat was a leftover "because it was the last one." [Pl.'s SMF ¶ 64]. The Vessel was a new boat, and Smith believed there was no need to advise Molbogot that he should not buy the leftover Sea Ray boat. [Pl.'s SMF ¶ 65; Pl.'s Resp. SMF ¶ 44]. The Vessel was acquired by MM around April of 2017. [Pl.'s SMF ¶ 66; Pl.'s Resp. SMF ¶ 45]. The Vessel was docked in different stores until October of 2018. [Pl.'s SMF ¶ 67]. The history of the Vessel included a work order showing that, over a year before Molbogot's purchase of the Vessel, the generator was throwing an "AF code." [Pl.'s SMF ¶ 82; Pl.'s Resp. SMF ¶ 52]. In July of 2018, the generator was shutting down on run up. [Pl.'s SMF ¶ 83; Pl.'s Resp. SMF ¶ 53]. On September 27, 2018, the history showed "generator will not run." [Pl.'s SMF ¶ 84]. MM acknowledges that the longer a boat is in its possession, the worse it is financially for MM. [Pl.'s Resp. SMF ¶ 58].

After receiving a request for demo, on October 23, 2018, Mike Nolan ("Nolan"), service manager for MM, Ed Mace ("Mace"), service advisor for MM, and Smith exchanged an email concerning the Vessel. [Pl.'s SMF ¶ 15]. Nolan informed Smith: "We're working on a generator issue. Other than that[,] the boat is really nice." [Pl.'s SMF ¶ 16]. Smith knew as of October 23, 2018, the Vessel docked in Clearwater was "ready with the exception of the generator," as MM was waiting on a vendor to get it repaired. [Pl.'s SMF ¶ 17]. In other words, Smith knew as of October 23, 2018, that the generator of the Vessel needed to be repaired. [Pl.'s SMF ¶ 18]. On October 24, 2018, Smith forwarded Nolan's email to Jay Youmans ("Youmans"), the General Manager of the MM Stuart location, where Smith worked. [Pl.'s SMF ¶ 19]. Smith and Youmans knew a new controller part had to be ordered for the generator of the Vessel to be fixed. [Pl.'s SMF

¶ 20; Pl.'s Resp. SMF ¶ 24]. Smith wrote Nolan and Mace: "if I make the demo Saturday, do you think that parts will be in for the generator in time to fix it?" [Pl.'s SMF ¶ 12].

A functioning generator recharges the batteries if the engines fail. [Pl.'s SMF ¶ 24]. Batteries of the GPS of the boat can continue to be charged through the generator. [Pl.'s SMF ¶ 25]. While offshore, air conditioner, stove, water heater, and microwave do not work without a working generator. [Pl.'s SMF ¶ 28]. In case of engine failure, the generator keeps the batteries of the Vessel's radar charged up. [Pl.'s SMF ¶ 29]. The duration of radar usage can be increased by a working generator. [Pl.'s SMF ¶ 30]. "You can do more with a working generator than you can without if your boat has one." [Pl.'s SMF ¶ 31]. Having a working generator provides notice through the radar of the Vessel that a boat is heading in the direction of the Vessel. [Pl.'s SMF ¶ 32].

Prior to showing the Vessel to Molbogot, MM knew "the trim tab, trim plane wells" of the Vessel "are failing or the sifters are mounted and need to be replaced." [Pl.'s SMF ¶ 86; Pl.'s Resp. SMF ¶ 55]. Smith never told Molbogot of the trim tab indicator because "its [sic] not a big issue in his opinion. And it would be fixed." [Pl.'s SMF ¶ 90]. According to Smith, the trim tab indicator meant it "could have needed something as simple as fluid." [Pl.'s SMF ¶ 91]. The omission of information by MM was intentional, in that "any work that's done by a warranty, inventory or maintenance is not work that's disclosed in any way[,] shape or form to potential buyers' prospects." [Pl.'s SMF ¶ 92].

A defective generator and trim tabs reduce the usability of the boat and can create a safety hazard. [Pl.'s SMF ¶ 102]. Smith believes Molbogot did not have a need to get background of the brand-new boat, as he sold thousands of boats, and never asked for a "frigging background on a brand-new boat when—before it gets delivery on what's wrong and how come it's wrong." [Pl.'s

SMF ¶ 105]. General maintenance includes checking fluids, including oil and fuel, starting the motor, washing the boat, checking the battery and water, and changing the oil filter. [Pl.'s SMF ¶ 107].

### The Demo of the Vessel

Molbogot was not informed the generator needed a new controller. [Pl.'s SMF ¶ 33]. MM did not expect for Molbogot to have been told the generator required a part to be fixed. [Pl.'s SMF ¶ 78]. This meant, before Molbogot drove from Lake Worth across the state of Florida for probably four hours, Molbogot was not informed the generator was not working. [Pl.'s SMF ¶ 36]. Smith could not inform Molbogot of the generator problem before the sea trial because he "didn't know that there was an issue." [Pl.'s SMF ¶ 37]. Smith claimed the day he "showed up with Jay is when" he "found out about the generator" so he could not have told Molbogot prior to the demo. [Pl.'s SMF ¶ 38]. However, Smith could have asked for information as to why the generator was having a problem. [Pl.'s SMF ¶ 114]. Smith never told Molbogot the generator would have to be replaced, but he admitted knowing the generator would be fixed because worst-case scenario, "if we ever had to replace a generator, we would replace it." [Pl.'s SMF ¶ 104]. MM knew a new controller was necessary for the generator, and it was not a matter of the generator being tweaked. [Pl.'s SMF ¶ 95]. A controller of a generator is a significant part, not a tweak. [Pl.'s SMF ¶ 96].

When Molbogot arrived in Clearwater, the Vessel was hot. [Pl.'s SMF ¶ 39]. Molbogot asked Smith why it was so hot. [Pl.'s SMF ¶ 40]. Smith explained that the generator only needed to be tweaked. [Pl.'s SMF ¶ 41]. Smith also explained that the generator was not running, and the air conditioning would not work because the generator was not on. [Pl.'s SMF ¶ 42]. Smith told Molbogot, "you know, new boats its [sic] common for generators to be adjusted." [Pl.'s SMF ¶ 43]. Smith further told Molbogot this was a new boat, and electrical and mechanical things

5

sometimes need to be adjusted when they come out of the factory. [Pl.'s SMF ¶ 44]. Since Smith used the words "tweaked and adjusted," Molbogot thought this meant turning a screw. [Pl.'s SMF ¶ 45].

Smith reassured Molbogot about his 30 years of experience in the industry. [Pl.'s SMF ¶ 46]. Molbogot did not know about generators and so he listened to Smith based on Smith's experience. [Pl.'s SMF ¶ 47]. Smith told Molbogot that he should not be concerned about the generator, as it would be up and running in no time. [Pl.'s SMF ¶ 48]. Smith told Molbogot the generator was reliable and everything else in the new vessel would work; thus, Molbogot did not hire a pre-purchase surveyor for the new boat, as he trusted and relied on MarineMax and Smith. [Pl.'s SMF ¶ 49]. Plaintiff participated in a sea trial/demonstration of the Vessel four days before he purchased it from MarineMax. [Def.'s Resp. SMF ¶ 2].

<u>Molbogot's October 29, 2018 Email and Later Phone Call</u>

On October 29, 2018, two days before executing the purchase agreement, Molbogot wrote Smith an email. [Pl.'s SMF ¶ 51]. Molbogot asked for Smith's clarification and thoughts: "Also, as we both witnessed there were a few things that were not working, they just bring thought to mind of concern." [Pl.'s SMF ¶ 52]. Molbogot also wrote: "The generator…I know that boats always have issues, but still a new boat. Hope this will not be common." [Pl.'s SMF ¶ 53].

Malcolm Taylor ("Taylor") was a service manager of MM. [Pl.'s SMF ¶ 71]. Molbogot's October 29, 2018, email was sent by Smith to Taylor, Youmans, and a service advisor at MM Stuart. [Pl.'s SMF ¶ 72; Pl.'s Response SMF ¶¶ 39-40]. Youmans, Taylor, and the service advisor had access to the full-service history of the Vessel. [Pl.'s SMF ¶¶ 70, 73]. Smith could see an overview of some work orders. [Pl.'s SMF ¶ 74].

Molbogot spoke to Smith either on Monday or Tuesday following the demo on the phone. [Pl.'s SMF ¶ 56]. Smith knew Molbogot had never owned a boat before. [Pl.'s SMF ¶ 57]. Between October 29 and October 30, 2018, Smith informed Molbogot there was absolutely no reason to be concerned about the generator or the AC Unit. [Pl.'s SMF ¶ 58]. Smith reassured Molbogot that Molbogot would have no problems with the Vessel and generator. [Pl.'s SMF ¶ 59]. Despite Smith knowing days before the demo that the generator was not working, requiring a part and a vendor to install it, Smith believed there was no need to ask for a history of the generator to share with the customer. [Pl.'s SMF ¶ 61]. Smith testified Molbogot was buying a brand-new boat that was under warranty, that should not and "most of the time, does not have issues like this. Or an issue with the generator." [Pl.'s SMF ¶ 62]. Smith's intent was to make a sale, as that is what he does. [Pl.'s SMF ¶ 68].

The Purchase of the Vessel

A boat is not sold until the customer is done signing documents and pays for it. [Pl.'s SMF ¶ 115]. Molbogot could have changed his mind on the date of purchase. [Pl.'s SMF ¶ 116]. Molbogot purchased the Vessel, a new 2017 Sea Ray 400DA Sundancer, Hull ID: SERP8959C717 from MarineMax on October 31, 2018, and signed the Vessel's purchase papers on that date. [Pl.'s SMF ¶ 117; Def.'s SMF ¶ 1; Def.'s Resp. SMF ¶ 1]. He entered into a Purchase and Sale Agreement with MarineMax on October 31, 2018. [Def.'s SMF ¶ 5; Def.'s Resp. SMF ¶ 5]. He paid a sales price of $530,595.00, not including sales tax, other fees, or the extended warranty. [DE 112-5 at 2 of 3]. Molbogot did not have a contract to service his vessel with MM as the limited warranty is between Molbogot and Sea Ray, and it specifically gives MM discretion to select the dealer to participate in repairs and replacements. [Pl.'s Resp. SMF ¶ 59].

On October 31, 2018, Mike Demask, business manager for MM Stuart represented verbally that the Vessel Molbogot was purchasing was reliable. [Pl.'s SMF ¶ 119]. While Molbogot was sitting at MM Stuart, signing purchase documents, Smith emailed Nolan inquiring not whether the generator had been tweaked but instead if it had been fixed. [Pl.'s SMF ¶ 120]. Molbogot was never made aware by Smith that he was asking on the date Molbogot was signing the purchase document if the generator had been fixed. [Pl.'s SMF ¶ 121]. Nolan's response to Smith at 10:04 a.m. was forwarded by Smith to other employees of MM Stuart, making them aware that MM was awaiting a vendor to repair the generator. [Pl.'s SMF ¶ 122]. MM did not inform Molbogot that he was sold a boat with trim tabs that had not been repaired. [Pl.'s SMF ¶ 123].

According to Taylor, MM knew the generator of the Vessel had problems. [Pl.'s SMF ¶ 108]. MM did not make a proper repair and sold the vessel with defects in it, including a defective generator. [Pl.'s SMF ¶ 109]. Information was omitted that that the refrigerator, bilge pump, and sunshade were not working prior to October 31, 2018. [Pl.'s SMF ¶ 111]. MM did not inform Molbogot the boat was not bonded. [Pl.'s SMF ¶ 112].

<u>The Vessel after the Sale</u>

The controller was never installed before the Vessel was delivered. [Pl.'s SMF ¶ 98]. The work concerning the trim tabs was never completed before the sale or delivery of the Vessel to Molbogot. [Pl.'s SMF ¶ 87]. MM never informed Molbogot of the warranty claim that it had submitted and never completed for the trim tabs of the Vessel. [Pl.'s SMF ¶ 88]. After the purchase, the generator in the Vessel would not run, as experienced by MM before October 31, 2018. [Pl.'s SMF ¶ 127]. On November 9, 2018, employees of MM's store where Smith worked knew that the generator of the Vessel was not working. [Pl.'s SMF ¶ 128]. MM knew the generator was not repaired by November 15, 2018. [Pl.'s SMF ¶ 129]. From October 31, 2018, through November

8

21, 2018, MM never offered Molbogot his money back or a different boat. [Pl.'s SMF ¶¶ 130]. MM knew Molbogot wanted his money back and no longer wanted the Vessel, but MM refused to give Molbogot his money back. [Pl.'s SMF ¶ 131, 132 133, 150]. As late as April of 2022, the trim tabs still did not work. [Pl.'s SMF ¶ 135]. The lack of working trim tabs is unsafe due to low visibility. [Pl.'s SMF ¶ 136]. The vessel also has constant electrical problems. [Pl.'s SMF ¶ 137]. Plaintiff presently has the Vessel listed for sale on BoatTrader.com for $499,000. [Def.'s SMF ¶ 9; Def.'s Resp. SMF ¶ 9].

MM's Training

MM trains its employees to know that "the biggest thing is the relationship that you build with a client, and then you get their trust" and then the customers "really start listening to what you have to tell them about a boat and how you're going to lead them through the sale." [Pl.'s Resp. SMF ¶ 12]. MM training states: "And our job is to lead them. And I don't necessarily know if a client knows exactly what they're really looking for, and that's why they came to us… I think if you take the time to build that trust in the beginning, it'll work out for you in the end." [Pl.'s Resp. SMF ¶ 13].

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).   If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

"The filing of cross motions for summary judgment does not raise a presumption that no genuine issue of material fact exists; they *must be considered separately*, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Rental Boat Corp. v. Great Lakes Ins. SE*, No. 20-60352-CIV, 2020 WL 7496267, at *1 (S.D. Fla. Dec. 2, 2020) (quoting *United States for Use & Benefit of S. Site &*

10

*Underground, Inc. v. McCarthy Improvement Co.*, No. 3:14-cv-919, 2016 WL 11505394, at *4 (M.D. Fla. Aug. 23, 2016) (emphasis added; quotation marks and citations omitted)); *see also D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn." (citation omitted)); *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." (quotation marks and citation omitted)); *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) (explaining the legal standard for cross-motions for summary judgment).

## IV.   DISCUSSION AND ANALYSIS

### A. Local Rule 56.1

The Local Rule requires that "an opponent's Statement of Material Facts shall use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.'" S.D. Fla. L. R. 56.1(b)(2)(B). The Local Rules also state that, "[i]f an opponent's Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute." S.D. Fla. L. R. 56.1(b)(2)(C). Defendant's Responsive Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment [DE 137] violates both portions of the Local Rule. Defendant simply omitted any of Plaintiff's facts that it did not dispute, rather than explicitly stating that such facts were undisputed. Defendant also failed to provide evidentiary citations for several of the facts it disputed. Thus, under the Local Rule, many of the facts cited by

Plaintiff in his Motion for Summary Judgment must and shall be deemed admitted. S.D. Fla. L. R. 56.1(c).

### B.   Count I: Fraud in the Inducement

#### 1.   Plaintiff's Motion for Summary Judgment on Count I (Fraud in the Inducement)

In his Motion for Summary Judgment, Plaintiff is moving for summary judgment on the liability and causation portions of Count I (Fraud in the Inducement). [DE 117 at 1]. Plaintiff argues that the undisputed facts establish that Defendant, through Smith, misrepresented material facts to Plaintiff; Defendant and Smith knew that the statements made to Plaintiff were false representations; Smith intended for his representations to induce Plaintiff to rely and act on them; and Plaintiff suffered injury in justifiable reliance on the representations. *Id.* at 9–14. Plaintiff contends that it is "undisputed that MarineMax did not represent the truth to Molbogot regarding the generator and the mechanical problems of the Vessel." *Id.* at 12. Plaintiff further contends that the "omission of the information on the part of MarineMax was intentional." *Id.* According to Plaintiff, the "superior knowledge MarineMax had of the generator's latent defects and trim tab problems could not be learned without the disclosure form [sic] MarineMax. The intentional omissions of a material fact, including the condition of the generator and trim tabs constitutes fraud." *Id.*

Defendant responds that "viewing the evidence in a light most favorable to MarineMax, Plaintiff has presented no facts that can be said to be dispositive on required elements of a fraud in the inducement claim." [DE 138 at 3]. According to Defendant, "at a minimum, there are disputed issues of material fact as to whether (1) MarineMax misrepresented a material fact; (2) MarineMax knew or should have known of a false statement; (3) MarineMax intended to induce Plaintiff to enter into a contract by the alleged misrepresentation; and (4) Plaintiff acted in

justifiable reliance on the alleged misrepresentation." *Id.* at 4. Finally, Defendant contends that, even if the non-reliance of the Purchase Agreement did not preclude claims premised on alleged fraud, the "Purchase Agreement is evidence that his reliance on any alleged misrepresentations made by MarineMax was not justifiable." *Id.* In other words, the "non-reliance of the contract, on its own, is enough to raise a genuine issue of material fact and defeat Plaintiff's Motion for Summary Judgment." *Id.*

In reply, Plaintiff asserts that Defendant "does not contend that Plaintiff's facts do not entitle Plaintiff to judgment under the agreed-upon elements of Plaintiff's first cause of action. This is the exact case in which the Federal Rules envision summary judgment being granted." [DE 152 at 4]. Plaintiff lays out the undisputed facts that he believes prove each element of Count I. *Id.* at 5–9. Plaintiff also argues that the Eleventh Circuit has found that an "as is" clause cannot preclude a fraud claim unless the contract expressly precluded a fraud claim. *Id.* at 9.

2.   <u>Defendant's Motion for Summary Judgment on Count I (Fraud in the Inducement)</u>

Defendant concedes that there is a "split of authority in Florida's courts on the application of written disclaimers in purchase agreements to preclude fraud claims," but it argues that the "better approach favors holding the parties to their contractual promises." [DE 114 at 5]. Defendant points out that the Purchase Agreement in this case states that the Vessel is sold "as is" and also "disclaims any warranties and any liability for incidental or consequential damages." *Id.* at 6. Defendant maintains that, in light of the language of the Purchase Agreement, "Plaintiff agreed he was not relying on any representations made by Mr. Smith and Marinemax." *Id.* at 7. Defendant next argues that it was unreasonable, "as a matter of law, for plaintiff to have relied only on Mr. Smith's alleged representations. It is particularly unreasonable in light of the clear language of the Purchase Agreement. Therefore, Plaintiff's fraudulent inducement claim has no

13

merit." *Id.* In sum, Defendant asserts that "the non-reliance language of the contract, on its own, is enough to defeat Plaintiff's claims and support entry of summary judgment in favor of MarineMax." *Id.* at 11. Defendant further asserts that, even if Smith's statements were misrepresentations, "it is undisputed that Plaintiff had knowledge of the alleged misrepresentation. Plaintiff participated in a sea trial of the Vessel before he entered into the purchase agreement, and the generator and air conditioning were inoperable at that time." *Id.* at 13. Defendant argues that Plaintiff has not offered any evidence that Smith made statements that he believed or should have believed were untrue. *Id.* at 14. It further argues that Smith's statements "constitute the opinion or 'puffing' of Smith—a salesperson," and no one at MarineMax "prevented Plaintiff from investigating the quality or condition of the Vessel." *Id.* at 14–15. Finally, Defendant contends that "Plaintiff has put forth no evidence to support" his claim for damages as to either "out of pocket" loss or the "benefit of the bargain" loss. *Id.* at 15–16.

In response, relying on the Court's verbal ruling in *Johnston v. MarineMax East, Inc.*, Case No. 8:17-CV-03122 (M.D. Fla. Feb. 22, 2019) [DE 126-1], Plaintiff argues that the terms of the Purchase Agreement "do not expressly state that it is incontestable on the ground of fraud," so summary judgment should be denied. [DE 127 at 8]. Next, Plaintiff rejects Defendant's argument that it "contracted against liability for its own fraud by virtue of having the merger clause MarineMax drafted in its agreement" because none of the misrepresentations made were specifically disclaimed and because a representation is different from an omission. *Id.* Plaintiff asserts that the applicable case law states that fraud in the inducement is not barred just because a merger clause exists in the agreement. *Id.* at 9. Next, Plaintiff argues that Defendant's summary judgment motion must be denied because Defendant "fraudulently induced Molbogot to enter into a Purchase Agreement for a boat MarineMax knew had numerous ongoing failures of the

14

generator. . . instances where the generator was not running and shutting down, and trim tabs that were failing, and had to be replaced . . . . *Id.* Plaintiff believes the evidence shows that Smith knew his statements were false. *Id.* at 11. Plaintiff further contends that material facts demonstrate that he justifiably relied on Defendant's representations, Plaintiff has no obligation to discover the fraudulent misrepresentations, and Defendant was not engaging in mere puffery but rather made statements of fact. *Id.* at 11–15. Finally, Plaintiff argues that material facts show his compensatory and punitive damages. *Id.* at 18.

In reply, Defendant acknowledges that a split exists among and within the District Courts of Florida on "the issue of the impact of varying contractual disclaimer and merger clause language on fraud claims." [DE 148 at 3]. However, Defendant argues that the "princip[al] cases Plaintiff relies upon are distinguishable from the facts herein." *Id.* Defendant also argues that some of the cases cited by Plaintiff were wrongly decided and/or "presented in a duplicitous manner." *Id.* at 6. It concludes that "it is clear that the case law in this District supports a finding that Defendant is entitled to judgment as a matter of law as to its defenses to each of Plaintiff's claims." *Id.* Defendant also argues that Plaintiff cannot prevail because he cannot show that he reasonably relied on an assertion by Defendant prior to executing the Purchase Agreement. *Id.* at 8. Defendant explains that complaints and issues that arose later are irrelevant. *Id.* According to Defendant, "Plaintiff's and Mr. Smith's statements are not at odds factually." *Id.* at 9. Defendant also emphasizes that Plaintiff was "as aware of the boat's problems as Mr. Smith." *Id.* at 10. It argues that Plaintiff has failed to present any evidence of a requisite element of his claim—reliance— because he disclaimed reliance in executing the Purchase Agreement. *Id.* Finally, Defendant maintains that Plaintiff has not supported his claims for damages with any independent evidence, instead relying on his own unverified, self-serving statements. *Id.* at 10–11.

3.   <u>Relevant Law as to Count I (Fraud in the Inducement)</u>

"Under Florida law, to state a cause of action for fraud in the inducement, a party must establish the following elements: 1) a false statement regarding a material fact; 2) the person making the statement knew or should have known that the representation was false; 3) intent by the person making the statement to induce action or reliance; and 4) injury suffered because of justifiable reliance on the representation." *Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*, 510 F. Supp. 2d 1015, 1024 (S.D. Fla. 2007) (citing *Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005)). Florida law places the duty on one who undertakes to disclose material information "to disclose the information fully." *Gutter v. Wunker*, 631 So.2d 1117, 1118–19 (Fla. 4th DCA 1994).

4.   <u>Analysis as to Count I (Fraud in the Inducement)</u>

As to Plaintiff's Motion for Summary Judgment on Count I (Fraud in the Inducement), the Court agrees with Defendant there are disputed issues of material fact, at the very least, as to whether Defendant knew or should have known of a false statement, whether Defendant intended to induce Plaintiff to enter into a contract by the alleged misrepresentation, and whether Plaintiff acted in justifiable reliance on the alleged misrepresentation. In his Motion, Plaintiff cites to various statements made by George Smith. However, there are undisputed material facts listed in Plaintiff's own Statement of Material Facts which establish that Smith could not inform Molbogot of the generator problem before the sea trial because he "didn't know that there was an issue" [Pl.'s SMF ¶ 37]; that when Plaintiff questioned him during the trial run of the Vessel, Smith explained the generator was not running, and the air conditioning would not work because the generator was not on [Pl.'s SMF ¶ 42]; that Smith never told Molbogot of the trim tab indicator because "it's not a big issue in his opinion. And it would be fixed" [Pl.'s SMF ¶ 90]; that Smith believed that the

16

trim tab indicator meant it "could have needed something as simple as fluid" [Pl.'s SMF ¶ 91]; and that Smith never told Molbogot the generator would have to be replaced but admitted knowing the generator would be fixed because worst-case scenario, "if we ever had to replace a generator, we would replace it." [Pl.'s SMF ¶ 104].

Additionally, Plaintiff's own undisputed facts also show that, on October 29, 2018, two days before executing the purchase agreement, Plaintiff wrote Smith and asked for Smith's clarification and his thoughts; Plaintiff explicitly wrote: "Also, as we both witnessed there were a few things that were not working, they just bring thought to mind of concern." [Pl.'s SMF ¶¶ 52-52]. Plaintiff further noted: "The generator…I know that boats always have issues, but still a new boat. Hope this will not be common." [Pl.'s SMF ¶ 53]. These facts, which are listed by Plaintiff and are not disputed by Defendant, lead the Court to conclude that there are genuine issues of material fact as to several elements of the fraud in the inducement claim regarding whether Smith (and Defendant) knew or should have known of a false statement, whether Smith (and Defendant) intended to induce Plaintiff to enter into a contract by the alleged misrepresentation, and whether Plaintiff acted in justifiable reliance on the alleged misrepresentation. Thus, Plaintiff's Motion for Summary Judgment must be denied as to Count I.

In Defendant's Motion as to Count I (Fraud in the Inducement), the crux of Defendant's argument is that summary judgment should be entered in its favor as to Count I because Plaintiff signed an "as is" contract to purchase the Vessel. Defendant concedes that there is a "split of authority in Florida's courts on the application of written disclaimers in purchase agreements to preclude fraud claims," but it argues that the "better approach favors holding the parties to their contractual promises." [DE 114 at 5]. Defendant emphasizes that the Purchase Agreement in this

case states that the Vessel is sold "as is" and also "disclaims any warranties and any liability for

incidental or consequential damages." *Id.* at 6.

The contract at issue states in relevant part:

1. **MANUFACTURER'S WARRANTY.** The boat, motor and accessories sold pursuant to this Agreement are sole subject only to applicable manufacturer's warranties, if any, except as otherwise expressly provided in this Agreement.

2. **DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**, unless Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale. If Seller gives Buyer a written warranty on its own behalf or enters into a service contract in connection with this sale or within 90 days of sale, then any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract.
**SELLER DISCLAIMS AND SHALL NOT BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, OR INDIRECT DAMAGES OF ANY NATURE. EXCEPT AS SET FORTH HEREIN, ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE EXPRESSLY EXCLUDED AND DISCLAIMED TO THE MAXIUM EXTENT PERMITTED BY LAW. THE RIGHTS AND REMEDIES DESCRIBED HEREIN SHALL BE THE SOLE AND EXCLUSIVE REMEDY AGAINST SELLER. NO OTHER REMEDIIES ARE AVAILABLE TO BUYER, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSON.**
. . .

8. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties and no other verbal or written representations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties. This Agreement super[s]edes any prior Purchase Agreement between Buyer and Seller for the purchase of a boat, motor and/or accessories that had not been consummated. Except as specifically set forth in this Agreement, Seller disclaims reliance on any such representations or statements by any agents, employees or representatives of Seller, whether verbal or in writing, in advertisements or brochures, and Buyer has not relied upon any such representations or statements other than the representations and statements made in this Agreement.

18

[DE 112-5 at 3].

In 2017, the Eleventh Circuit reversed a district court's granting of summary judgment to a defendant on a fraudulent inducement claim. *Global Quest, LLC v. Horizon Yachts, Inc., Horizon Group, et al.*, 849 F.3d 1022 (11th Cir. 2017). The district court had relied upon integration clauses to hold that the plaintiff could not have relied upon the alleged pre-contractual misrepresentations that were contradicted by the later written agreement. *Id.* at 1027. In reversing, the Eleventh Circuit relied upon *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941), which explained that "where an agreement is procured by fraud or misrepresentation every part of the contract is vitiated because it is well settled that a party [cannot] contract against liability for his own fraud." *Id.* (citing *Oceanic Villas*, 4 So. 2d at 690) (internal quotation marks and brackets omitted). The court in *Global Quest* explained that "a contract provision, including an 'as is' clause, cannot preclude a fraud claim, unless the contract expressly states that it is incontestable on the ground of fraud." 849 F.3d 1028. The court explicitly found that the existence of a warranty disclaimer is not sufficient to change the result; only a specific disclaimer of liability for fraud would bar a fraud in the inducement claim. *Id.*

Subsequently, courts in the Southern District of Florida and in the State of Florida have applied the above-cited law and have permitted fraud in the inducement claims even when there is an "as is" contract with a merger clause. *See, e.g.*, *Kolmat Do Brasil, Ldta v. Evergreen United Invs., LLC*, No. 14-81320-CIV, 2017 WL 11680170, at *3 (S.D. Fla. June 5, 2017) ("Based on this precedent, the Court will not grant summary judgment on the basis that false statements were contradicted by the signed agreement."); *Cal. Inst. of Arts & Tech., Inc. v. Campus Mgmt. Corp.*, No. 18-24701-CIV, 2020 WL 1692079, at *4 (S.D. Fla. Jan. 22, 2020) ("In Florida, the presence of a merger clause is not an impediment to a cause of action for fraud in the inducement." );

19

*McIntosh Fish Camp, LLC v. Colwell*, 315 So. 3d 784, 787 (Fla. 5th DCA 2021), *reh'g denied* (May 13, 2021) ("We first conclude that the contract's merger clause does not bar Monroe and McIntosh's fraud-based counterclaims.").

      Defendant tries to distinguish this body of law by stating that its contract is different in that the contract did not just disclaim warranties; rather, the contract also included language that the seller specifically disclaims any representations made by the seller or its agents and specifically states that Plaintiff was not relying upon any such representations. However, Defendant relies on cases such as *Elbow River Mktg. Ltd. P'ship v. Clean Fuel Lakeland, LLC*, No. 8:10-CV-628-T-30AEP, 2010 WL 5209345, at *1 (M.D. Fla. Dec. 16, 2010), *Peebles v. Sheridan Healthcare, Inc.*, 853 So. 2d 559 (Fla. 4th DCA 2003), *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007), and *Billington v. Ginn-LA Pine Island, Ltd., LLLP*, 192 So. 3d 77 (Fla. 5th DCA 2016), which were all decided before *Global Quest*.[2] Thus, the Court rejects Defendant's position and finds at this summary judgment stage that the fraud in the inducement claim is not barred by the wording of the contract. This is because the "as is" contract entered into by Plaintiff and Defendant does not contain an explicit and specific disclaimer of liability for fraud, as required by the applicable case law.

      Additionally, as stated above, the Court finds that there are genuine issues of material fact as to whether Plaintiff should have discovered the fraud through ordinary diligence and whether the allegedly fraudulent statements made by Smith are actionable or mere "puffery." Finally, the Court finds that Plaintiff has sufficiently sought damages. [Pl.'s Resp. SMF at ¶ 7, 8, 64, 68, 70,

---

[2] The Court specifically asked Defendant's counsel at the July 7, 2022 oral argument hearing whether he could cite to any case law authority decided after the 2017 *Global Quest* decision, and he responded that he could not.

DE 125]. Based on the foregoing, Defendant's Motion for Summary Judgment must be denied as to Count I (Fraud in the Inducement). Count I shall proceed to trial for determination by a jury.

      C.  Count II: Violation of the Florida Deceptive and Unfair Trade Practices Act

      1.  Plaintiff's Motion for Summary Judgment on Count II (FDUTPA)

Plaintiff moves for summary judgment on Count II (FDUTPA) because "MarineMax unfairly deceived a consumer." [DE 117 at 15]. He lists the undisputed facts that support his position. *Id.* at 15–16. Plaintiff also asserts that the omission of information by Defendant was intentional. *Id.* at 16. According to Plaintiff, Defendant "engaged in unfair and deceptive practices, as it withheld information from a customer concerning the electrical and mechanical condition of a Vessel MarineMax was selling. Moreover, the deceiving information provided to the customer, i.e., Molgobot, and the omission of truthful information, caused and induced Molgobot to purchase the Vessel." *Id.* at 17. Finally, Plaintiff contends that the "subject of a consumer transaction here was the purchase of the Vessel," and the evidence shows that Plaintiff paid $124,571.20 more than what the Vessel was worth. *Id.*

In response, Defendant contends that Plaintiff has failed to establish a lack of genuine issue of material fact regarding Count II. [DE 138 at 4].

In reply, Plaintiff contends that Defendant has not sufficiently argued that Plaintiff's facts do not entitle him to summary judgment on Count II. [DE 152 at 9]. In other words, Plaintiff asserts that Defendant has failed to set forth any specific facts "showing why there is an issue for trial." *Id.* at 10. Plaintiff further asserts that the three elements of a FDUTPA claim are met since defendant "withheld material information as its deceptive practice," thereby duping Plaintiff into purchasing the Vessel. *Id.* Plaintiff finally points out that Defendant has not provided a counter-affidavit to dispute Plaintiff's affidavit regarding actual damages. *Id.*

2.   Defendant's Motion for Summary Judgment on Count II (FDUTPA)

Defendant maintains that the same analysis for Count I also applies to Count II. [DE 114 at 11]. According to Defendant, the contact's language here contradicts the alleged fraudulent statements. *Id.* at 12. Defendant next asserts that, even if Smith's statements were misrepresentations, "it is undisputed that Plaintiff had knowledge of the alleged misrepresentation. Plaintiff participated in a sea trial of the Vessel before he entered into the purchase agreement, and the generator and air conditioning were inoperable at that time." *Id.* at 13. Defendant argues that Plaintiff has not offered any evidence that Smith made statements that he believed or should have believed were untrue. *Id.* at 14. It further argues that Smith's statements "constitute the opinion or 'puffing' of Smith—a salesperson," and no one at MarineMax "prevented Plaintiff from investigating the quality or condition of the Vessel." *Id.* at 14–15. Finally, Defendant maintains that Plaintiff has "failed to put forth evidence of damages recoverable under the Act." *Id.* at 15.

In response, Plaintiff argues that Count II is not barred by the contract language and the information provided to him was false and incomplete. [DE 127 at 15–16]. Plaintiff believes that a "jury could find here that an objectively reasonable person would have been deceived by MarineMax's actions." *Id.* at 16. He contends that the "merger clause here cannot limit the liability of MarineMax for its deceptive and unfair trade practices, as said provision would be against public policy." *Id.* According to Plaintiff, his claim stands even in the face of the contract. *Id.* He further points out that FDUTPA claims do not require reliance, so neither an "as is" disclaimer nor a reliance disclaimer precludes FDUTPA claims. *Id.* at 17. Finally, Plaintiff asserts that the actual damages are "$124,571.20 representing the difference between the value of the vessel at the time it was sold with all of the problems, and the value for the amount it was sold." *Id.* at 19. Plaintiff believes a "reasonable jury could decide that MarineMax violated FDUTPA and award actual

22

damages." *Id.*

In reply, Defendant asserts that "Plaintiff's argument in opposition to Defendant's right to summary judgment as to Plaintiff's FDUTPA claim is just another rambling rehash of his argument regarding his fraud-in-the-inducement claim." [DE 148 at 6]. Defendant maintains that the "Purchase Agreement does adequately and with particularity disclaim the condition of the Vessel. Thus, under the salient case law set forth in Defendant's Motion, which is ignored by Plaintiff, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's FDUTPA claim." *Id.* at 6–7. Defendant argues that Plaintiff has misstated the law on FDUTPA and reliance; instead, the law is that "it is an objective, rather than a subjective, standard. So, while actual reliance may not be required to sustain a FDUTPA claim, it is misleading to say reliance is not an element." *Id.* at 7. Defendant claims that "by any objective standard Plaintiff's reliance fails the standard of objectively reasonable reliance. No knowing misrepresentations were made to Plaintiff. However, even if there were, the language in the Purchase Agreement was clear and unequivocal regarding disclaiming reliance on any prior representations." *Id.* at 8. Defendant points out that Plaintiff was aware of the Vessel's condition on the date of purchase. *Id.* Therefore, "it is patently unreasonable for Plaintiff to say he relied on any sales puffery over his own knowledge and his own contractual undertaking to disregard such statements." *Id.* Finally, Defendant maintains that Plaintiff has not supported his claims for damages with any independent evidence, instead relying on his own unverified, self-serving statements. *Id.* at 10–11.

### 3.  Applicable Law as to Count II (FDUTPA)

To prevail on a FDUTPA claim, a plaintiff must show "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Hucke v. Kubra Data Transfer, Corp.*, 160 F.Supp.3d 1320, 1328 (S.D. Fla. 2015). "A deceptive act or practice is one that is likely to mislead

consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* at 1328 (internal quotation omitted). To satisfy the first element of the FDUTPA claim, a party may allege either a traditional or *per se* violation. *Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-CV-62772, 2017 WL 3336715, at *2 (S.D. Fla. Aug. 4, 2017). To establish a traditional FDUTPA violation, the plaintiff must show defendants engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.; *Feheley v. LAI Games Sales, Inc.*, No. 08-cv-23060, 2009 WL 2474061, at *5 (S.D. Fla. Aug. 11, 2009).

### 4.   Analysis as to Count II (FDUTPA)

The crux of Plaintiff's argument in his Motion for Summary Judgment is that there is no genuine issue of material fact that Defendant unfairly deceived Plaintiff, a customer. [DE 117 at 15]. The Court disagrees. The same facts discussed above with regard to the fraud in the inducement claim in Count I are also relevant to the Court's analysis of the Count II FDUTPA claim. When the facts pulled directly from Plaintiff's undisputed facts are viewed in the light most favorable to Defendant, there are genuine issues of material fact that preclude the granting of summary judgment as to Count II in Plaintiff's favor. The issues of whether Defendant engaged in a deceptive act or unfair practice, causation, and actual damages must be decided by a jury.

Defendant states in its Motion for Summary Judgment that the "same analysis for Count I above applies to the FDUTPA claim warranting summary judgment in favor of MarineMax." [DE 114 at 11]. Applying the same analysis as for Count I, the Court finds that Defendant's Motion for Summary Judgment must also be denied as to Count II. Additionally, the Court finds that Plaintiff has sufficiently sought damages under Count II. [Pl.'s Resp. SMF at ¶¶ 29, 62, 63].

24

D. <u>Count III: Negligence</u>

1. <u>Plaintiff's Motion for Summary Judgment as to Count III (Negligence)</u>

Plaintiff moves for summary judgment on as to liability and causation on Count III (Negligence). [DE 117 at 17]. Plaintiff argues that Defendant "confirms Molbogot's negligence claim involves his Vessel being at MarineMax for four months without any work being done." *Id.* at 19. He also argues that, since the Complaint alleges that Defendant recklessly delayed the process of repair, which left Plaintiff without the Vessel for months, Plaintiff is entitled to summary judgment "as it relates to liability in connection with the discreet issue of delay." *Id.*

In response, Defendant asserts that "[i]t seems that Plaintiff's negligence claim has been reduced to a complaint that his vessel was at MarineMax for repairs for a period of four months." [DE 138 at 5]. Defendant also argues that Plaintiff is solely relying on the fact that Malcolm Taylor testified that the Vessel was with Defendant for four months; however, according to Defendant, Taylor also testified that the Vessel was waiting for repairs by a third party. *Id.*

In reply, Plaintiff simply maintains that he is entitled to summary judgment on Count III because Defendant "only disputes without citation." [DE 152 at 11].

2. <u>Defendant's Motion for Summary Judgment as to Count III (Negligence)</u>

The only argument that Defendant actually makes in its Motion for Summary Judgment regarding Count III is that "Plaintiff's negligence claim arises from alleged negligent repairs after the purchase of the Vessel. Such claims fail under the general maritime law. The damages claimed as a result of MarineMax's alleged negligence are unclear, but Plaintiff seems to seek 'loss of use' damages. Loss of use damages do not apply to recreational vessels, unless it is demonstrated that they are hired out as charter vessels for profit." [DE 114 at 16].

In response, Plaintiff explains that Count III is premised on Defendant's "negligence in its repairs and resulting damages, including loss of use." [DE 127 at 19]. Plaintiff asserts that the evidence shows that Defendant kept the Vessel for months in shallow water, damaged the Vessel by plugging up the air conditioner, failed to timely repair the generator, and caused damages to A/C components. *Id.* Plaintiff further asserts that summary judgment "is not proper as a reasonable jury could find that Molbogot's damages while his vessel was at MarineMax being damaged, and not being worked on[,] include his loss of use of an amount between $91,027.00 to $96,600.00." *Id.* at 20. Plaintiff argues that it paid extra money for warranties for the Vessel which were depleted by Defendant while the Vessel was docked without any work being completed on it. *Id.* Plaintiff has provided a summary of his damages and believes that summary judgment is improper because he has provided evidence of "damage to the vessel, duty, breach and damages resulting from MarineMax's negligence." *Id.*

In reply, Defendant again argues that "Plaintiff's assertion of damages with respect to this negligence claim is unsupported by any evidence." [DE 148 at 11]. Defendant asserts that "loss of use" damages "are not recoverable under maritime law with respect to recreational vessels." *Id.* It further contends that no other damages can be properly asserted against Defendant because Plaintiff and Defendant did not have a contract to service the vessel; instead, the limited warranty was between Plaintiff and SeaRay. *Id.*

### 3.   Relevant Law as to Count III (Negligence)

Because this Court's jurisdiction arises under diversity, Florida substantive law applies. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010). To sustain a cause of action for negligence under Florida law, Plaintiff bears the burden of proving three negligence factors: (1) that Defendant had a duty to protect Plaintiff, (2) that Defendant

breached that duty, and (3) that Defendant's breach was the proximate cause of Plaintiff's injuries and resulting damages. *Cabrera v. Macy's Fla. Stores, LLC*, No. 20-24173-CIV, 2022 WL 1642762, at *3 (S.D. Fla. Mar. 31, 2022) (citing *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1367 (S.D. Fla. 2008)). "Summary judgment may properly be granted in negligence cases only where the moving party has successfully met his burden of proving the absence of a genuine issue of material fact." *McCabe v. Walt Disney World Co.*, 350 So.2d 814, 815 (Fla. 4th DCA 1977) (citing *Holl v. Talcott*, 191 So.2d 40 (Fla. 1966); *Grall v. Risden*, 167 So.2d 610 (Fla. 2d DCA 1964)). Summary judgment is improper "even where there is no conflict in the evidence, provided that inferences reasonably deducible therefrom cast doubt upon material issues." *McCabe*, 350 So.2d at 815.

### 4.   Analysis as to Count III (Negligence)

Plaintiff argues in his Motion for Summary Judgment that Defendant has conceded its negligence by admitting that it had the Vessel for four months and that it does not know what was done to the Vessel on a daily basis. [DE 117 at 18]. Plaintiff specifically argues that he is "entitled to summary judgment as it relates to liability in connection with the discreet issue of delay." *Id.* Plaintiff's entire argument rests on Malcolm Taylor's deposition testimony. Mr. Taylor testified that the Vessel was in Defendant's possession for some period of months, no one wanted to pay Defendant or give it authorization to fix the boat, and Mr. Taylor ultimately made the decision to continue repairing the Vessel. [DE 116-6 at 61: 1-25; 62: 1-17]. Mr. Taylor also testified that there should not have been any wait because "Sea Ray should have stepped up and made repairs to the boat. They would not." *Id.* at 63: 21-23. In light of this testimony, there is a genuine issue of material fact that to whether Defendant was actually negligent as to the issue of delay.

Furthermore, Plaintiff has alleged other conduct by Defendant in the Complaint as a basis

for the negligence count, which conduct is not even discussed in Plaintiff's Motion. [Compl. at ¶¶ 106–166]. Additionally, Plaintiff acknowledges in its papers, and Plaintiff's counsel acknowledged at the hearing, that the damages issue is one for a jury. It would be illogical for this Court to parse the negligence count as requested by Plaintiff.

Defendant's only argument in its Motion for Summary Judgment is that "[l]oss of use damages do not apply to recreational vessels, unless it is demonstrated that they are hired out as charter vessels for profit." [DE 114 at 16]. Defendant's request for summary judgment shall be denied as Plaintiff is also arguing that his warranty period and finance charges kept accruing while the Vessel was in Defendant's possession and not available to Plaintiff. In other words, there is no need to even rule on the loss of use issue as Plaintiff is claiming other types of damages as well.

### E.   Defendant's Affirmative Defenses

In Plaintiff's Motion for Summary Judgment, he seeks summary judgment on several of Defendant's affirmative defenses. [DE 117 at 18–20]. First, Plaintiff maintains that the defense of caveat emptor fails because "Plaintiff's fraudulent inducement claims cannot be barred as a matter of law," so the defense of caveat emptor fails as Plaintiff "could not have known the representations made to him were false, nor were they obvious as apparent from the record." *Id.* at 19. Next, Plaintiff argues that the second and third affirmative defenses concerning the "as is" contract must fail because "[r]elevant information concerning the purchase of a new vessel was intentionally omitted," these "omissions resulted in Plaintiff entering into the contract," and the "contract as issue does not cover omissions." *Id.* Plaintiff also contends that the thirteenth affirmative defense must fail "since it does not bear on the equities of the case at bar." *Id.* at 20. Plaintiff asserts that the fifth affirmative defense must fail because Defendant "could not explain how not spending money with MarineMax equates to a lack of maintenance" and because

Defendant "agrees the video and audio evidencing the window of the Vessel was closed when a wave [sic] hit the bow of the ship changes MarineMax's assessment of its failure to properly operate the vessel defense." *Id.* Finally, Plaintiff contends that the eighth affirmative defense must fail because the "facts of this case demonstrate that this case involve undisclosed latent defenses, which information Defendant chose to withhold, and could not have been discovered. . . ." *Id.*

Defendant does not directly respond to any of these arguments in its response.

In reply, Plaintiff asserts that, since the purchase agreement "does not disclaim fraud," the first and second affirmative defenses "fail as a matter of law." [DE 152 at 9].

Defendant's First Affirmative Defense is that that Plaintiff's claims are barred by the doctrine of caveat emptor. *See* Answer and Affirmative Defenses, DE 11.

Defendant's Second Affirmative Defense is that Plaintiff is estopped from and has waived recovering damages from Defendant because, prior to purchasing the Vessel, Plaintiff inspected and accepted the Vessel and purchased it "AS IS," signing an agreement that expressly waived reliance on any representations and acknowledged Defendant did not assert warranties. *Id.* Further, Plaintiff continued using the Vessel despite being aware of alleged misrepresentations made by Defendant. *Id.*

Defendant's Third Affirmative Defense is that Plaintiff's claims fail as a matter of law because the sale of the Vessel is governed by the Purchase Agreement, which expressly states Defendant makes no warranties, express or implied, the Vessel was purchased "AS IS," and the Purchase Agreement constituted the entire agreement between the parties, any other statements or representations were expressly disclaimed, and Plaintiff acknowledged he did not rely on any such statements or representations. *Id.*

29

Defendant's Fifth Affirmative Defense is that Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to maintain the Vessel and failure to properly operate the Vessel. *Id.*

Defendant's Eighth Affirmative Defense is that Plaintiff's claims are barred, in whole or in part, to the extent the claimed defect or deficiency was patent, open, obvious, or otherwise discoverable upon a reasonable inspection. *Id.*

Defendant's Thirteenth Affirmative Defense is that Plaintiff's alleged reliance on any misrepresentations was unreasonable and/or unjustified given he expressly acknowledged he was not relying upon any statements made by Defendant and pursuant to the terms of the contract. *Id.*

In its response to Plaintiff's Motion for Summary Judgment, Defendant did not specifically respond to Plaintiff's various arguments that summary judgment should be granted in Plaintiff's favor as to the above affirmative defenses; however, Defendant did implicitly address Plaintiff's arguments in its response to Plaintiff's Motion for Summary Judgment and in Defendant's Motion for Summary Judgment. The affirmative defenses at issue primarily deal with the "as is" contract and whether Plaintiff should have relied on Defendant's statements. These are also the primary issues argued by the parties in the papers as to Counts I and II. Further, at the July 7, 2022 hearing, Defendant's counsel stated that while Defendant did not specifically address the affirmative defenses in its summary judgment papers, and while the better practice would have been to specifically address them in its filings, its arguments contained in its summary judgment papers regarding Counts I, II and III are equally applicable to the affirmative defenses as they all relate to the same issues in dispute. Thus, the Court finds that while the better practice would have been for Defendant to specifically address Plaintiff's arguments as to the affirmative defenses in writing, the Court will not find any waiver by Defendant here. It would be unfair and unjust to do so and would put form over substance.

The Court prefers to decide this matter on the merits. Therefore, based on its analysis above as to Counts I, II, and III, the Court finds that there are genuine issues of material fact as to the First, Second, Third, Fifth, Eighth, and Thirteenth Affirmative Defenses. Plaintiff's Motion for Summary Judgment is denied as to Defendant's affirmative defenses. If timely raised, the Court can readdress those affirmative defenses at trial at the close of all the evidence.

## V.   <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant Motion for Summary Judgment [DE 114] is DENIED. Additionally, Plaintiff's Motion for Summary Judgment [DE 117] is DENIED.

All three counts of the Complaint, along with all of Defendant's affirmative defenses, shall proceed to a jury trial. All pending issues shall be resolved at the upcoming trial where the trier of fact will have an opportunity to hear and consider all the relevant and probative evidence and make credibility determinations.

The parties are again advised that this case is specially set for a trial beginning on Monday, August 15, 2022, at 9:00 a.m. before United States Magistrate Judge William Matthewman at the U.S. Courthouse located at 701 Clematis Street, Courtroom Six, Third Floor, West Palm Beach, Florida. The parties and their counsel shall be ready and present in-person for the trial at that time. All remaining pretrial deadlines shall be strictly complied with by the parties.

The calendar call is set for 2:00 p.m. on August 10, 2022, to take place via Zoom Video Teleconference (VTC). To log in through ZoomGov Meeting, use Meeting ID: 160 540 3826 and Passcode: 246129. All participants at the hearing are expected to appear by both audio and video.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of July, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge